Welcome to the third day of our panel here in Atlanta. Judge Pryor and I are very happy, very glad, and very thankful to have with us Judge Federico Moreno from the Southern District of Florida. Judge Moreno has been on the federal bench for over three decades. He was appointed to the bench by President Bush. We're all aging with you. He was the Chief Judge of the Southern District of Florida for seven years, served on the United States Courts Executive Committee with the Chief Justice. So he brings a wealth of experience and we're very, very glad that he's here with us. Thank you. It's good to be in Atlanta and go to some great restaurants in Midtown. You know the lighting system. When the yellow light goes on, that means that your time is drawing to a close, so begin to wrap up. If we take you beyond the red light, then just keep speaking with us. You'll be on our time and not yours. And with that, we're ready to begin with our first case, which is number 22-11082 Central Baptist Church of Albany v. Church Mutual Insurance Company. May it please the Court, Laurie Webb Daniel representing Church Mutual Insurance Company, which I refer to as CMIC. CMIC asks the Court to reverse the judgment because it's at odds with two provisions, the plain language of two provisions of the party's contract. The provision voiding the contract for fraud and also the valuation provision. And I'd like to start with the fraud provision. It casts the affirmative defense that it was excluded. Exactly, Your Honor. I understand that argument and it seems, I mean, it certainly is a valid argument. We have to see on first look, what do I do with a waiver? Help me out. Wasn't there a waiver of that? Oh, no, Your Honor. I think it might be helpful if I go through the chronology of what happened. I'll try to be quick on this. So the church, that's Central Baptist, the church was claiming total replacement of the roof due to hail. Shortly before trial in 2019, CMIC learned that actually it was asking for total replacement from another insurance company. Brought this to the attention of the Court. The plaintiff, the church, wanted to exclude any evidence of fraud. CMIC got briefing on this issue. After the pre-trial conference, the Court asked for briefing. And the briefing is very clear, both the principle brief and the reply brief. And I can give you the docket numbers for those that's in my notebook if you'd like. But what happened is then just a few weeks before the trial, there was a telephonic hearing on this issue. And CMIC vociferously argued that it should be allowed to present evidence. And this was a affirmative defense, misrepresentation, concealment. It was material because of the valuation. The Court, this is very quirky, the Court kind of got their argument upside down and said no. The Court thought they were arguing that the misrepresentation to the other insurance company and trust was what they were relying on. And sure, they mentioned, they did point to some of that evidence, but that wasn't the crux of their claim. The crux of their claim is that was not disclosed to CMIC. So they argued it. This is before trial. They go on into trial, the Court in a purportedly in limine ruling barred any evidence of misrepresentation or concealment or fraud. The affirmative defense, there was no way, it was gone. Even though it was supposed to be an in limine ruling, it was in essence a summary judgment ruling before trial. So they, okay, CMIC did the best it could at trial. They get to the charge conference. CMIC had submitted jury instructions on fraud. I got that and you laid that out in the paper fairly well. I'm looking at page 101 and 102. Would this be the word withdrawn? Yeah. Yes. I understand. A lawyer says, you know, you're having a conference, busy trial judge saying, we're going to trial, we're going to trial next week. Let's go through that. And the lawyer said, Mr. Schmidt, right? Right. He said, so any of the unlisted church mutuals not withdrawn on the record, Your Honor. Whenever you hear that, maybe I don't have to do anything as a trial judge, except maybe before the wiser judges are there. Well, yeah, okay. Number one, it was out of the case. There wasn't already, it was out. So there was nothing for Mr. Schmidt to withdraw at that point in time. What is, what was he withdrawing at that point? He was saying it was withdrawn, not that he was withdrawing. It's a syntax issue. But fraud was specifically mentioned. So wouldn't at that time lawyers say, well, we think Your Honor already ruled on that. Well, it was taken out of the case. It was a dispositive ruling. It's like if you have a summary judgment that you've lost, she's wiped out, granted ruling, dispositive ruling, you don't have to keep bringing it up at trial. I think what Judge Moreno is getting to is this. If you have a ruling by a judge that you think is improper and excludes evidence, for example, you can't just say I'm foregoing that evidence. You have to do certain things. Norm, for example, a judge excludes a witness. You can't stop there. You have to profit from it. You can't say, oh, Judge, you ruled that witness is out, so I'm withdrawing that witness, and then nobody hears about it. Yes. So, okay. I understand that, Your Honor. There's Federal Rule of Evidence 103, and you don't have to repeat an objection after there's been a dispositive ruling. That's not what we're doing here. Well, so this is an important issue for the court to decide, and that is was there a dispositive ruling on a purported motion in limine. And we've cited in our reply brief cases that say— You thought there was a dispositive ruling. Your client did, right? Or your client's lawyers thought there was a dispositive ruling, right? Correct. Then you force the district judge to stick to that ruling by submitting a proposed jury instruction that says, this is our jury instruction. And the judge will say, I excluded that evidence. I excluded that theory. I'm not giving you that jury instruction. And you say, okay, you have my objection for the record, and then you let the court follow that. Well, respectfully, Your Honor, I think after you've gotten a dispositive ruling against you, the jury instructions were submitted to show this was the position that CMIC had, that there was fraud. The court says, no, no, it's out. Okay. Let's assume there wasn't a waiver. What evidence was the insurance company allowed to present about the lower valuation provided to the second insurance company on that claim? The question is the evidence that the insured was allowed to present or the no.  CMIC. So this goes to there was some evidence as to a lower valuation, not fraud. But the problem is the valuation. I'm asking you what evidence were you allowed, was your client allowed to elicit about the lower valuation? The client was allowed to elicit a lower valuation. And circumstances that that arose in or not? No, no, no. They were not allowed to present the circumstances, the failure to disclose, the fact that there was, you know, a duty to disclose. You asked the witness, did your client, the church, submit a lower valuation for the roof? The answer is yes. What was it? This amount of money. When did you do that? Here. Who did you submit it to, this insurance company? Is that the way it played out? It played out that there was evidence of the lower amount. It was presented to another insurance company? There was a valuation that was presented. Presented to whom? It was presented to, yeah, to the church. You were allowed to the church. I'm trying to find out what you were allowed. I'll give you some extra time. Okay. I'm trying to find out how the evidence of the lower valuation was introduced at trial. I'm trying to figure out the extent or the possibility of error. Right. So a witness of the church was asked, I presume, you're claiming X amount of dollars. Haven't you submitted a lower valuation of Y amount of dollars recently? The answer would be yes, we did. And that amount was Y, not X, right? Yes. Was that witness asked who it was submitted to? Your Honor, I think the witness was asked who it was submitted to. It was an evaluation submitted to the church. It was their evaluator who had done it. So I think that's what the evidence was. On the question of the evidence, the alternative point we're making, and this was made in the Rule 50A motion and then touched on again after trial, it's that the policy itself requires valuation at the time of loss. And undisputed, this valuation was not at the time of loss. It was years later and they still had not replaced the roof and the plaintiff's evidence, in fact, increased it for the course of time. That's contrary to the terms of the policy. And for that reason, we'd ask for a new trial. So respectfully, Your Honor, if we could have perhaps a couple of minutes in rebuttal. I need to sit down now. I do want to give you some extra time, so can you give her two more minutes, please? Thank you. Go ahead. What happens in the new trial, though, see, if you get it? And then what's the issue with the affirmative defense? Because it seems like your argument is the judge misunderstood what we were saying about fraud. That's really what you're saying. Lawyers always say respectfully, but that's really what you're saying, right? I would agree. No, I would agree there was a misunderstanding. Well, I'd say I would ask you to reverse. Okay. Okay, remand for new trial with the affirmative defense evidence going in. It should be an evidentiary issue. There was the Fivash case that's kind of a mirror image where the trial court granted J. Murrell for the insurance company, and Your Honor, so. But she didn't go to the jury and say there's not enough evidence because that's kind of what she said, right? No. What she said was that the evidence of misrepresentation or concealment to Amtrust was not relevant to the failure to disclose this second opinion to CMIC. That's what she said. She was thinking of. She had it backwards. By the way, that would be relevant because under 404B, it would go to motive and fraud and all of that. But then the mistake was explained to her, and she stuck with her ruling. She did, and we think that was error. We think. At that point, she really wasn't confused because the mistake had been explained. Well, she seemed to stay confused, frankly, the way I read the transcript. And Your Honor, that's part of why we're here is for you to see there's enough. The standard for materiality is in the Perry decision, and it's like anything that would impact. The alleged fraud you're relying on is not that they submitted a second claim, but that they submitted a second claim for a lower amount and didn't tell you about it, right? That and there was other evidence they did not disclose. There was evidence that one of their new adjuster, you know, contractors who were giving them an opinion thought there was no damage. So there was not just this one, you know, lower 700,000, whatever. And that's not what you're raising on appeal. Yes, Your Honor. We've got that in there as well. You're trying to pile everything up into that one issue about the exclusion of the fraud evidence, but the other stuff is stuff you get through discovery. Well, they got it. They got it right before trial. They got it right before trial. You were not able to put in evidence of that contractor who gave them an opinion? No. If you read her rulings of the telephonic hearing, she just wiped out one after another after another after another of these pieces of evidence that were in the briefing, just wiped them all out and said she wasn't letting anything go that was going to go to misrepresentation or concealment claim. All right. You've saved your time for rebuttal. Thank you. Thank you. May it please the Court, I'm Brandon McWhorter for Central Baptist Church. Good morning. Good to be here with you today. Your Honors, the hailstorm that is at the genesis of this case was ten years ago. This appeal follows a jury verdict that followed four days of trial and 35 witnesses. Respectfully, there has been no error. There has been no abuse of discretion, and the trial court's judgment should be affirmed. I want to go right into this Hurricane Michael second claim issue. Church Mutual claims that the trial court robbed it of an opportunity to present evidence of misrepresentation to the jury. Two reasons that's wrong. First, it's factually false. There was never a summary judgment motion granted. Certain evidence was excluded. A ton of evidence about Hurricane Michael was let in. Which evidence was excluded? There was a tolling agreement with Amtrust, which was the second insurance company. That was excluded. There was various nuances that had no relevance to the claims being presented. The things that were allowed in were things like the estimate associated with that second claim. That was talked about by numerous witnesses. There were several estimates. There was also a building consultant that was involved in the second claim, a guy from Washington State. An asbestos roofing consultant, he was allowed to testify. An engineer associated with the second claim was allowed to testify. An adjuster associated with the second claim was allowed to testify. All of that testimony came in. Wasn't there a jury instruction on misrepresentation? No, but it wasn't asked for. It waived because it wasn't asked for. You wouldn't object to it because you said there was some evidence that you challenged. Well, the waiver occurred both before, during, and after trial. First at the pretrial conference in November 2019. A phone conference. I think that was a phone conference. The court asked, are you going to be arguing fraud before this jury? The answer, no, Your Honor. Then at the trial, at the close of proof, after everything had come out, the court stops the court and says, before you go any further, let me ask you, are you relying on any of these affirmative defenses? No. She goes on. So any of the ones listed, Church Mutual was not relying on. Withdrawn on the record, Your Honor. Now, they would argue that it was withdrawn by the court, not itself. But let's look at what came after that. Following that, we had the charge conference. There was no request for an instruction on fraud. No request for any instruction on misrepresentation. It just didn't happen. Then she goes back. We actually had agreed instructions. There's a back and forth on page 123 of docket 356 that says this. I ask, are we in agreement that we've got an agreed charge except for the efficient proximate cause instruction, which is not at issue? The court says yes. Opposing counsel says correct. Then, so she goes back, takes a break, gets the instructions, makes her changes, comes back out, and this is at docket 356, page 125, and she states, ladies and gents, the instructions are as we discussed with one exception, on number 13, because defendant is not offering any affirmative defenses, we took out the paragraph referencing affirmative defenses. Fraud was one of those. They didn't object. They didn't state, Judge, that's wrong. Then, we go forward from there. They're saying we're in the decision of the judge. Why are we going to have this fight with a judge at the end? We've lost. It's like you argue with a ref before the game is over, but this is, we're at the end. There's no point doing that. There are not going to be any more rulings. That certainly they thought, at least now they're saying, they thought, okay, we can't win on that, so there's no point putting it in there. They should have said, for the record, right, like lawyers always say, for the record, we're going to do this. They didn't do that. Is that a total waiver, not doing that? Absolutely. When you say you're not going to rely on it, then you withdraw it formally, then the judge says, these are three different times, then the judge says, based on the fact that you are withdrawing any affirmative defenses, you would think at some point somebody would stand up and say, Judge, that's not right. We're not. We need an instruction, but that never happened. If they would have said that, we could have talked about it, but that's just not what happened. I want to get back to the question about what evidence about the supposed misrepresentation was allowed to be introduced. Was there evidence to say that you basically gave another estimate to another insurance company for the same loss, something to that effect? The judge, as a general proposition, allowed limited evidence of the claim itself. She allowed mention of the claim to give context for what was being presented. Primarily, the second estimate, the $700,000 estimate associated with Hurricane Michael, came in on the issue of damages. To answer your question, there was never any attempt to present evidence that there was some. There is no evidence of a misrepresentation. Let's just start there. I mean, if you . . . Well, that's all I said. My question was, was there any evidence to say you submitted a different amount for the same loss to another insurance company that conflicts with what you're submitting here, something to that effect? The trial court allowed in various estimates associated with the Amtrust claim. There was the one that they focused on, which is the $700,000 estimate from strategic roofing. There were actually two others from the insurance company, the second insurance company, Amtrust. The jury considered all of that, rejected all of that proof. I mean, the reason they rejected it is if you look at the $718,000 estimate from strategic roofing, it's not apples and apples by any stretch. First, it was for a different material. This church had an asbestos tile roof, lasted 100 years. It's no longer made. Four different church mutual witnesses testified that like kind and quality, which is what the church mutual policy provides for, would require slate. The estimate associated with the Amtrust claim was not slate. It was asphalt shingles, a much cheaper material. In addition to that, it was a different scope. It didn't include interior damages. It didn't even include all of the roof. In addition to that, it didn't include the beat-up copper steeple. So there was a variety of ways that the jury could conclude, obviously, this is apples and oranges. The judge looked at that, too. She didn't just exclude the evidence. She looked at it, decided it wasn't relevant, did the 403B analysis and said, there's no way this comes in. Then on top of all that, it's weight. So there's just a variety of ways that you can get to the same result, and that is that there was no error. Another thing that they, staying on this misrepresentation issue for just a moment, one of their other arguments is, well, the judge confused the issue. She was considering what was being represented to Amtrust, which was the second insurance company, not what was being concealed from church mutual. That is just factually false. If you look at the transcript of one of the pretrial conferences, it's docket 297, page 10. The judge considered that precise issue, precisely, and called it, quote, nonsensical. Why? Well, in order to have a misrepresentation, there has to be some statement of fact. The record is devoid of that. There is nothing in the record to suggest that Central Baptist lied to anybody. It can also be an omission in certain circumstances, right? Absolutely, and in order to have fraudulent concealment, you have to have what? A duty. And there's nothing in this policy that would require Central Baptist Church to disclose a claim with a different insurance company under a different policy on a loss that happened four years after the one that we're talking about. It's just not there. Moving on to issue two, which is whether the evidence supports the verdict. I want to hit this at-the-time-of-loss issue head on. And to do that, I think I really need to give you some context. This insurance policy, in all reality, did not provide for replacement cost value coverage up front. What it provided for was a two-step process. A, you get actual cash value first. How do you do that? Replacement cost value, less depreciation equals actual cash value. So that's what you get up front, up until you do the work, at which point in time you can recover the depreciation and get the full benefits of the policy. So that's what the policy called for. So obviously, in light of that, there's a big, huge discussion at the charge conference about, how are we going to instruct the jury? Are we going to give them an ACV instruction, actual cash value, RCV, or both? Ultimately, Church Mutual agreed that only an RCV instruction would be given. Why? Because if they would have insisted on an ACV instruction, we were arguing that we would be entitled to an instruction about the prevention doctrine and about consequential damages. So recognizing all that and to avoid all that, Church Mutual affirmatively agreed to only include a replacement cost value instruction. That is at docket 355, pages 288 and 289. So now we get to the replacement cost value instruction. And it says, well, basically what that says is, jury, you are to determine damages on a replacement cost value basis. And here's what replacement cost is. It defines it. Wholly absent from that is any reference to at the time of loss. It's not there. Again, if they would have wanted that, they could have asked for it. We could have talked about it. I would have insisted on then having an instruction about consequential damages, about then having an instruction about the prevention doctrine, but it just didn't happen. And so when it doesn't happen, there's nothing to talk about. In addition, the issue that was raised to the trial court in their post-trial Rule 59 motion was not about this amount of loss question. The argument there was, Judge, you should have given an ACV instruction. That's the argument. And the judge quickly got rid of that because they had agreed expressly that that would not be the case. This amount of loss question wasn't raised in Rule 50B, post-verdict motion. It was never even addressed until this appeal. Can you talk about the claim about double recovery? Sure. In regards to increased inflationary costs going forward and prejudgment interest? Absolutely. They are correct that in Georgia you can't have duplicative damages, no doubt about that. They're also correct in their briefing that in order to figure out if you have duplicative damages, you've got to look at the purpose of the damages that are being awarded. And here we've got two categories. One, prejudgment interest, and two, what I'll call inflationary damages. So you look at the purpose of each. And the purpose of prejudgment interest is to compensate for loss of use. It's the capacity of wealth to create more wealth. The Georgia courts have held that prejudgment interest is a totally separate category from compensatory damages, and that's Crown Series versus Holiday Hospitality, 851 Southeast 2nd, 150. Inflation-adjusted damages, on the other hand, do something entirely different. They compensate for the diminished purchasing power as a result of inflation. And so it's exactly what the trial court held. It's not just me saying that. The Second Circuit, the D.C. Circuit, and the Sixth Circuit have all adopted that same analysis under, not under this type of case, but comparing inflationary damages on the one hand and prejudgment interest on the other. The court noted all of those cases and ruled appropriately. Another thing I would add on that topic is the jury did not decide how much prejudgment interest to award or when it would start. The verdict form asked them to do one thing, check yes or check no. The judge then decided when prejudgment interest would start. That was done via post-trial motions. We filed a motion to determine commencement date. We argued that the date should be the date of the only payment for $1,300 in January 2015. They argued, Church Mutual argued, for a date in November of 16. So keep in mind, the trial was December of 2019. They're arguing to the trial court prejudgment after the trial, after the verdict, that prejudgment interest should start in November of 16. That was the date that they had responded to a bad faith demand. The court ultimately rejected that. But it seems crazy to suggest that they can ask the trial court to start damages, to start interest in November 2016, and then now suggest that that would be double-dipping. That's exactly what they asked to do way back when. Now, when the judge decided to do that, we review it under what? Is it clear error or abuse of discretion? Help me out with that one. On this prejudgment interest question? I think that's an abuse of discretion. Not here. No. Thank you, Your Honor. Thank you very much. I'd like to refer the court to docket 297, which is the transcript of the telephonic hearing. And I'm going to just mention a few little bits that I think are relevant to our discussion today. The court excluded the deposition of Paul Carter. He's the one who admitted he hadn't disclosed these dual claims to separate insurance companies. She excluded that. And then she says, quote, The deposition testimony relating to the failing to disclose the pending claim, which is set forth in paragraph 5, it's also excluded. And I will tell you the same goes to the testimony as set forth in 6 and 7 and 8.  Is there a difference in the two claims? Why do you think that's fraud? Fraud is failure to disclose. They say that it's a different policy with a different reimbursement provision, that it was not the entire roof, that it was for a different material and caused by a different natural event. So tell me why that's fraud in the vernacular. What provision of the policy required the church to tell you about that claim? Well, there's a concealment policy, by the way, on this. What portion of the policy are you relying on for your fraud claim? Conditions, property conditions, section A, subsection 2 and 4. So 4 is a claim under this policy, and it requires disclosure at any time. Disclosure of what? Disclosure of anything that's relevant to the adjustment. And that goes to the period. You have all those differences. Why is that relevant? Let me speak to one of those differences. It's not a difference. The Amtrust policy called for same-like material. I've got it right here. It says. But whether it did or not, the estimate was for a different material. Was it not? No. No.  It was for the same material? Yes. That we were asking for. That's one of the problems we have here. Yeah. It was for asphalt, not slate. And that's very much an issue and dispute is what was like kind. And so that was a question that was an issue. So it was. It was central to the trial. And we were unable to show that the church had concealed the same kind of. Well, you said that you had denied the claim. Why was that alleged representation material? The claim was not denied. It was a difference. They did pay. All right. Well, there was evidence that, you know, there was no hail damage. But that's why they went on through the. By a lot. Okay. So I want to summarize that the judge in describing her finding, she says no reasonable jury could find that this testimony or evidence support a finding of a willful or intentional misrepresentation. That's a dispositive ruling. Why do you think that the evidence that you have constitutes fraudulent concealment? Because, again, there was not just this one. There was a lot of other evidence that there was no damage. There was damage. There was damage in the second claim? There was damage in the first claim. They wanted partial roof replacement? They wanted roof replacement? I think that. What was materially false or materially fraudulent about them not telling you about the second claim to Amtrust? Because the second claim to Amtrust was for an entire roof replacement. And this is in the evidence, and it was attached to the briefing on this issue that CMIC filed. And at some point, finally, the church tells Amtrust back off. We don't need to replace two roofs. Let us finish this with CMIC. That's just one example. But there's more evidence in the record as to that. I didn't think that this was ever going to be disputed because it's clear they were trying to get replacements of this roof. And that's the concealment. Perry has the correct standard. It should be a jury question. Perry fell a little short in not talking about dispositive rulings in the form of an in limine motion. But that's a very important issue for the court to resolve also. And just one last word, because I know you've been gracious in letting me have some extra time, and I appreciate that. I heard a lot about jury instructions this and jury instructions that when it comes to the proof of damage. But sufficiency of the evidence or insufficiency of the evidence does not turn on a jury instruction. And that's why when we point to what the policy actually says about replacement cost is as of the time of the loss or damage. And just clearly this was not. But they say that you agreed to a jury instruction which dealt with residual value and not actual value. And so the jury was looking at whatever it thought residual value was. Well. So I guess this comes to the point, there was a 50A motion referring to the specific provision of the policy. And then there are jury instructions that went on. And I do think that the 50A. This is only my impression. That your client has been sort of dancing and shifting with regards to different things. You agree that sufficiency and jury instructions aren't one and the same thing. You're absolutely right about that. But if you agree to the jury being instructed on a certain theory that now you say contradicts the language of the policy, you may be in trouble. That's what I see as a potential hurdle for you. You may be right that the policy doesn't allow this sort of damage claim in this amount of money given the circumstances. But then when the question becomes how do we instruct the jury on what damages to award if they find in favor of the church, there's an agreement about residual value. How do you square those two things? Well, Your Honor, I have to go with what was argued by trial counsel. And I do think that trial counsel preserved the argument that it was not compliant with the policy. And I think the plain language of the policy should control and not anything that the jury was instructed because the plaintiff has the burden of proof. So respectfully, that's what I submit. And for the other reasons, we request really a whole new trial on affirmative defense to include that, but at the very least a new trial on damages which were excessive even more than what was put in the pretrial order. I mean, it was disclosing an argument and the plaintiff's lawyer got the jury pumped up. And, you know, they gave an extraordinary amount of money that wasn't even. Yeah, I know. I appreciate that. Yes, yes. Thank you. Thank you both very much.